UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THE WESTON GROUP, INC., a Pennsylvania Corporation, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| VS. | ) ) | 3:12-CV-1964-G |
| SOUTHWEST HOME HEALTH CARE, LP, ET AL., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the defendants' motion to dismiss the plaintiff's complaint (docket entry 44). For the reasons stated below, the motion is granted in part and denied in part.

### I. BACKGROUND

#### A. Factual Background

This case involves the breach of a rehabilitation services contract. The plaintiff, The Weston Group, Inc., provides rehabilitation services. Plaintiff's Second Amended Complaint ("Complaint") ¶ 22 (docket entry 28). The defendant corporate

entities were in the business of providing home health services to clients.  See *id.* ¶ 23. Ronald Bowers, Kevin Ruark, and James Casey were limited partners in Southwest Home Health Care, LP ("Southwest"), and they were also officers and members of various of the related defendant entities: Southwest Home Health Care - Central Texas, LP; Southwest Home Health Care of Dallas, LLC; Southwest Home Health Care of Harris, LLC; SWHHC Management, LLC; SWHHC Management - Central Texas, LLC; NBM Healthcare Resource, Inc.; Southwest Home Health Care of East Texas, LLC; FHHS, LLC d/b/a Family Home Health Services, LLC; Family Home Health Services, LLC; Southwest Home Health Care Services of Texas, LLC; and Southwest Home Health Care Holdings of San Antonio, LLC.  *Id.* ¶¶ 2-12, 17, 37-39.

In January 2010, Weston's CEO, Nicole Volek, entered into a contract with Ronald Bowers, the CEO of Southwest, to provide various therapy services at Southwest's Houston location.  *Id.* ¶ 27.  In April 2011, Weston and Southwest signed another service contract, this time to provide service to Southwest's Dallas, San Antonio, and Round Rock locations.  *Id.* ¶ 28.  Weston performed on these contracts and sent Southwest invoices for its services, but in November 2011, Southwest stopped paying Weston.  *Id.*  Weston contacted Bowers to notify him about the unpaid invoices on November 8, 2011.  *Id.* ¶ 30.

In December 2011, Southwest reached an agreement with American Biocare, Inc. ("ABC") whereby ABC assumed the contracts and liabilities of Southwest's

Dallas, Houston, and Round Rock locations. *Id.* ¶¶ 31-32. Weston continued to contact the individual defendants about the overdue payments, and also spoke to John Clarke of ABC regarding payment. *Id.* ¶¶ 34-35. The defendants made promises to "catch up" on what they owed Weston, but their payments continued to be late and incomplete. *Id.* ¶¶ 34-36. In May 2012, Weston sent letters to Casey, Bowers, Ruark, and Clarke demanding payment of the past-due sums, but Weston received no responses or payments. *Id.* ¶¶ 40-41.

### B. Procedural Background

The plaintiff first sued many of the corporate defendants on June 22, 2012, seeking the money owed on the service contracts. *See* Plaintiff's Original Complaint and Jury Demand (docket entry 2). On July 2, 2012, Weston amended its complaint to add some details and an additional claim. *See* Plaintiff's First Amended Complaint and Jury Demand (docket entry 8). Later, on February 5, 2013, Weston filed a second amended complaint adding claims against the individual defendants, Kevin Ruark, James Casey, and Ronald Bowers, and against FHHS, LLC; Family Home Health Services, LLC; Southwest Home Health Care Holdings of Texas, LLC; and Southwest Home Health Care Holdings of San Antonio, LLC. *See* Complaint at 5-7. These "new defendants" filed a motion to dismiss on April 8, 2013. *See* Motion to Dismiss All Causes of Action for Failure to State a Claim in Accord with FED. R. CIV. P. 12(b)(6) as to Defendants FHHS, LLC; Family Home Health Services, LLC; Kevin

R. Ruark; James Casey; Ronald Bowers; Southwest Home Healthcare Holdings of Texas, LLC; and Southwest Home Healthcare Holdings of San Antonio, LLC ("Motion") (docket entry 44). While the motion purports to request dismissal of all claims against the "new defendants," the motion actually only makes arguments related to the vicarious liability of the individual defendants, Ruark, Casey, and Bowers. *See generally* Brief in Support of Defendants' Motion to Dismiss All Causes of Action for Failure to State a Claim in Accord with FED. R. CIV. P. 12(b)(6) as to Defendants FHHS, LLC; Family Home Health Services, LLC; Kevin R. Ruark; James Casey; Ronald Bowers; Southwest Home Healthcare Holdings of Texas, LLC; and Southwest Home Healthcare Holdings of San Antonio, LLC ("Brief") (docket entry 44-1). Weston filed a response to the motion on April 29, 2013, *see* Plaintiff's Response to Motion to Dismiss, and Brief in Support ("Response") (docket entry 49), and the defendants filed a reply on May 10, 2013. *See* Reply Brief Regarding Motion to Dismiss All Causes of Action for Failure to State a Claim in Accord with FED. R. CIV. P. 12(b)(6) as to Defendants FHHS, LLC; Family Home Health Services, LLC; Kevin R. Ruark; James Casey; Ronald Bowers; Southwest Home Healthcare Holdings of Texas, LLC; & Southwest Home Healthcare Holdings of San Antonio, LLC ("Reply") (docket entry 53).

After filing this motion to dismiss (as well as a motion for summary judgment on behalf of the original defendants), the attorneys for the defendants withdrew. *See*

Order on Referred Motions and Recommendation of the Magistrate Judge on Pending Deadlines (docket entry 80).  The defendants were given time to secure new counsel, but most of them failed to do so.  Eventually, the court granted default judgment against the unrepresented corporate defendants for the full amount of the plaintiff's claim.  *See* Default Judgment (docket entry 123).  However, that judgment has not yet been satisfied, so the case must proceed against the remaining individual defendants and the corporate defendants who have secured representation -- that is, against Kevin Ruark; Ronald Bowers; James Casey (who is proceeding pro se); Family Home Health Services, LLC; and FHHS, LLC.

## II.  ANALYSIS

### A.  Motion to Dismiss Standard

The defendants argue that because the plaintiff must prove "actual fraud" under Texas Business Organizations Code section 21.223 to establish vicarious liability, the plaintiff's allegations must meet the higher pleading standard of Federal Rule of Civil Procedure 9(b).  *See* Brief at 3-4.  Rule 9 instructs that "[i]n alleging fraud . . ., a party must state with particularity the circumstances constituting fraud."  FED. R. CIV. P. 9.  "'Although the language of Rule 9(b) confines its requirements to claims of . . . fraud, the requirements of the rule apply to all cases where the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud.'"  *Frith v. Guardian Life Insurance Company of America*, 9 F. Supp. 2d 734,

742 (S.D. Tex. 1998) (quoting *Toner v. Allstate Insurance Company*, 821 F. Supp. 276, 283 (D. Del. 1993)) (alteration in original). However, as will be discussed below, the requirements for showing actual fraud are less burdensome than those for establishing fraud. See *Spring Street Partners-IV, L.P. v. Lam*, 730 F.3d 427, 442-43 (5th Cir. 2013). Since actual fraud requires showing "dishonesty of purpose or intent to deceive," see *Archer v. Griffith*, 390 S.W.2d 735, 740 (Tex. 1964), establishing actual fraud is controlled by 9(b)'s guideline that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9. Therefore, the plaintiff's complaint will be evaluated under Rule 12(b)(6), not Rule 9(b).

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)), *cert. denied*, 552 U.S. 1182 (2008). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations, quotation marks, and brackets omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all

- 6 -

the allegations in the complaint are true (even if doubtful in fact)." *In re Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id.* (quoting *Martin K. Eby Construction Company, Inc. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)) (internal quotation marks omitted).

The Supreme Court has prescribed a "two-pronged approach" to determine whether a complaint fails to state a claim under Rule 12(b)(6). See *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The court must "begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. The court should then assume the veracity of any well-pleaded allegations and "determine whether they plausibly give rise to an entitlement of relief." *Id.* The plausibility principle does not convert the Rule 8(a)(2) notice pleading to a "probability requirement," but "a sheer possibility that a defendant has acted unlawfully" will not defeat a motion to dismiss. *Id.* at 678. The plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id.* at 679 (alteration in original) (*quoting* FED. R. CIV. P. 8(a)(2)). The court,

drawing on its judicial experience and common sense, must undertake the "context-specific task" of determining whether the plaintiff's allegations "nudge" its claims against the defendant "across the line from conceivable to plausible." See *id.* at 679, 683.

### B. Weston's Veil-Piercing Claim

#### 1. *Scope of the Motion as It Relates to the Veil-Piercing Claim*

The defendants purport to be moving to dismiss all claims against the individual defendants, Ruark, Casey, and Bowers. *See* Brief at 6. Insofar as the motion relates to the plaintiff's veil-piercing claim, however, the defendants focus solely on the requirements of Texas Business Organizations Code section 21.223, which applies only to Texas corporations and limited liability companies. *See* TEX. BUS. ORGS. CODE §§ 21.223, 1.102, 1.104, 101.002. Therefore, the motion can only affect the individual defendants' liability as it relates to the following Texas limited liability companies: Southwest Home Health Care Services of Texas, LLC; Southwest Home Health Care Holdings of San Antonio, LLC; Southwest Home Health Care of Dallas, LLC; Southwest Home Health Care of Harris, LLC; SWHHC Management, LLC; and SWHHC Management - Central Texas, LLC; and to the following Texas corporation: NBM Healthcare Resource, Inc. The motion does not relate to the individual defendants' liability through the following Texas limited partnerships: Southwest Home Health Care, LP and Southwest Home Health Care - Central Texas,

LP; nor to the following corporation and limited liability companies, which were incorporated in other states: American Biocare, Inc. (Nevada); Southwest Home Health Care of East Texas, LLC (Delaware); FHHS, LLC d/b/a Family Home Health Services, LLC (Michigan); Family Home Health Services, LLC (Delaware). Therefore, even if the motion were granted, that would not dispose of the plaintiff's veil-piercing claim against Ruark, Casey, and Bowers. Rather, it would simply become limited as to the entities through which the individual defendants could be held liable.

2. *Legal Standard*

Shareholders of Texas corporations and LLCs are generally insulated from individual liability for "any contractual obligation of the corporation or any matter relating to or arising from the obligation on the basis that the holder, beneficial owner, subscriber, or affiliate is or was the alter ego of the corporation or on the basis of actual or constructive fraud, a sham to perpetrate a fraud, or other similar theory" or for "any obligation of the corporation on the basis of the failure of the corporation to observe any corporate formality." TEX. BUS. ORGS. CODE § 21.223. To hold those shareholders liable, a plaintiff must "pierce the corporate veil." "Under Texas law, 'an assertion of veil piercing or corporate disregard does not create a substantive cause of action[;] . . . such theories are purely remedial and serve to expand the scope of potential sources of relief by extending to individual shareholders or other business

entities what is otherwise only a corporate liability.'" *Spring Street Partners*, 730 F.3d at 443 (quoting *In re JNS Aviation, LLC*, 376 B.R. 500, 521 (Bankr. N.D. Tex. 2007) (Jones, J.), *aff'd*, 395 Fed. Appx. 127, 128 (5th Cir. 2010)). To pierce the corporate veil regarding a contractual obligation, a plaintiff must show that a shareholder "caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the" shareholder. TEX. BUS. ORGS. CODE § 21.223(b).

"'Actual fraud' is defined as 'involv[ing] dishonesty of purpose or intent to deceive.'" *Spring Street Partners*, 730 F.3d at 442 (quoting *Tryco Enterprises, Inc. v. Robinson*, 390 S.W.3d 497, 508 (Tex. App.--Houston [1st Dist.] 2012, writ dism'd)). "Courts may deduce fraudulent intent from all of the facts and circumstances." *Id.* at 443. Furthermore, "in the context of piercing the corporate veil, actual fraud is not equivalent to the tort of fraud." *Latham v. Burgher*, 320 S.W.3d 602, 607 (Tex. App. --Dallas 2010, no pet.).[*] In practice, courts generally look at the totality of a shareholder's actions to determine whether he committed actual fraud. See *Spring Street Partners*, 730 F.3d at 445 (finding actual fraud where the defendant created an

---

[*] "The elements of fraud in Texas are (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury." *Shandong Yinguang Chemical Industries Joint Stock Company, Ltd. v. Potter*, 607 F.3d 1029, 1032-33 (5th Cir. 2010).

LLC to shift assets and allowed the company's charter to lapse after litigation began); *In re Arnette*, 454 B.R. 663, 694-95 (Bankr. N.D. Tex. 2011) (Houser, J.) (holding that a party committed actual fraud by making material misrepresentations, failing to disclose important information, and never intending to comply with the terms of the parties' agreement); *Latham*, 320 S.W.3d at 610 ("A rational juror could also have decided Latham's conduct in dissolving the corporation in the face of Burgher's claim represented dishonesty of purpose or an intent to deceive, i.e., actual fraud.").

3.  *Application*

The court concludes that the plaintiff's complaint makes sufficient allegations from which a jury could infer actual fraud. Weston alleges that the defendants frequently promised to pay for Weston's services, but then continued to make only partial payments or not pay at all. Complaint ¶ 34. Furthermore, Weston alleges that Bowers, Casey, and Ruark used one of their companies, Family Home Health Services, LLC, as a "back office" to funnel money between their different companies. *Id.* ¶¶ 67-68. According to Weston, Family Home Health Services received reimbursements for government health programs, some of which should have been paid to Weston for its services, but which were instead funneled toward improper purposes. ¶ 69. Weston also alleges that the price for which ABC purchased the Southwest entities shows that the individual defendants were allowing those entities

to operate undercapitalized at the time that they entered into transactions with Weston. *Id.* ¶¶ 71, 76.

The defendants rely upon *Shandong* to argue that Weston has not alleged adequate facts to show actual fraud. *See* Brief at 5. In *Shandong*, the court evaluated whether a plaintiff had alleged sufficient facts to support a claim for fraud. 607 F.3d at 1032-33. The court found that evidence that the defendant corporation had "funneled" money into other companies could constitute "slight circumstantial evidence of fraud" -- which, notably, was not a comment regarding the weight of that evidence, but a recitation of the evidentiary requirement for establishing fraudulent intent -- but concluded that the plaintiff's allegations "d[id] not rise above the level of a conclusory description" and upheld the dismissal of the plaintiff's complaint. *Id.* at 1034, 1036. The court concludes that Weston's allegations of improperly funneling money go beyond a mere "conclusory description" of wrongdoing. Furthermore, Weston alleges that the individual defendants in this case did more than just funnel money between entities -- they also allegedly made misrepresentations about fulfilling their contractual obligations and undercapitalized their corporate entities. The court therefore concludes that Weston has made sufficient allegations to survive a motion to dismiss against its veil-piercing claim.

C.  <u>Weston's Joint Enterprise Claim</u>

The defendants also move to dismiss the plaintiff's claim that the individual defendants are liable to Weston because they operated their businesses as a "joint enterprise." Brief at 6.  Specifically, the defendants argue that Weston simply stated the elements of a joint enterprise claim without offering any factual support for those elements. *Id.*  The court agrees.  Even if Ruark, Casey, and Bowers were running multiple business with a "common purpose," there are no factual allegations supporting the statements that they had "a community of pecuniary interest in that common purpose" or "an equal right to direct and control that enterprise."  *See* Complaint ¶ 79.  Furthermore, Weston did not offer any defense of this claim in its response to the defendants' motion.  *See generally* Response.  Therefore, the plaintiff's joint enterprise claim against the individual defendants is dismissed.

III.  <u>CONCLUSION</u>

For the reasons stated above, the defendants' motion to dismiss is **GRANTED** as to the plaintiff's joint enterprise claim, and **DENIED** as to the plaintiff's veil-piercing claim.

**SO ORDERED**.

March 11, 2014.

*/s/ A. Joe Fish*
**A. JOE FISH**
**Senior United States District Judge**